UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 18-CR-10064-LTS |
| | ) | |
| RYAN HOLLERAN | ) | |
| | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

The Defendant, Ryan Holleran, entered a plea of guilty as to Count 1 of the Indictment inasmuch as it charged Possession with Intent to Distribute Oxycodone in violation of 21 U.S.C. § 841. The Indictment's remaining counts were thereafter dismissed on motion of the government in view of the Court's order partially allowing Holleran's motion to suppress. For the reasons that follow, Holleran argues that the Court's suppression order should also preclude the use of suppressed evidence at his sentencing. Accordingly, he maintains that the proper application of the Sentencing Guidelines yields an advisory range of 18-24 months. Having already served approximately 20 months in pretrial detention, Ryan Holleran requests that the Court impose a sentence of time served and place him on supervised release for a period of 3 years.

*USE OF SUPPRESSED EVIDENCE AT SENTENCING*

The main issue presented at this sentencing concerns the scope of the Court's suppression order. The presentence report recommended that Holleran be accountable for the drugs and guns seized from the basement of 116 North Street, all of which were suppressed. PSR ¶25. In so doing, the Probation Office cited to USSG §6A1.3(a), which provides that the Court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial." If the Court accepts this proposition, due to additional drug quantities and

1

firearms found in the basement, the sentencing range suggested by the Sentencing Guidelines is 46-57 months. Conversely, if the Court declines to consider the suppress evidence, the sentencing range is considerably lower: 18-24 months.[1]

Holleran contends that (a) the exclusionary rule bars the use of suppressed evidence where, as here, police intentionally act in violation of the Fourth Amendment in order to increase a defendant's sentence, and (b) as a matter of judicial discretion, the Court should decline to consider the suppressed evidence for sentencing purposes in order to uphold the deterrent force of the Court's suppression order.

> I. **Although the general rule is that suppressed evidence may be considered at sentencing, it remains an open question in this Circuit "whether the exclusionary rule would bar the use of [suppressed] evidence when police intentionally act in violation of the Fourth Amendment in order to increase a defendant's sentence."**

The defendant acknowledges that, as a general matter, there is "no blanket prohibition on the consideration of illegally seized evidence for the purposes of making the findings required under the Guidelines." *United States v. Acosta*, 303 F.3d 78, 84 (1st Cir. 2002) (internal citation omitted). However, the *Acosta* court pointedly left open "the question of whether the exclusionary rule would bar the use of evidence when police intentionally act in violation of the Fourth Amendment in order to increase a defendant's sentence." *Id.* at 87.

Holleran asserts that the Fourth Amendment violation in his case implicates the question left open by *Acosta*. Here, the police executed a search warrant and seized two plastic bags containing oxycodone pills from Holleran's apartment at 116 North Street and placed him under arrest. Notwithstanding that the search warrant did not authorize it, and surely knowing that any evidence obtained would be used to Holleran's detriment at sentencing, the officers nonetheless

---

[1] The oxycodone tablet seized from Mr. Holleran's apartment produce a Converted Drug Weight of 59.9kg and yield an Offense Level of 18. Adjusted for acceptance of responsibility, the resulting Total Offense Level is 15.

extended their search into the basement.  In suppressing evidence from the basement search, the Court found that the actions of the police were not merely a violation of the Fourth Amendment but so unreasonable as to fall outside the good faith exception.  The Court's suppression order spoke specifically to the unreasonableness of the officers' conduct and the need for deterrence:

> "These characteristics of the basement at 116 North Street differ from previously decided First Circuit cases "in way that a reasonable person would suspect might be legally significant."  Bain, 874 F.3d at 20.  A reasonable officer would have thought these differences legally significant, which indeed they are.  "[W]here judicial precedent does not clearly authorize a particular practice, suppression has deterrent value because it creates an 'incentive to err on the side of constitutional behavior,'" and the good faith exception is unavailable.  Sparks, 711 F.3d at 63 (quoting United States v. Davis, 598 F.3d 1259, 1265-66 (11th Cir. 2010), aff'd, 564 U.S. 229 (2011))."

*Order on Motion to Suppress* at 16.  Under the circumstances of this case, at least, the exclusionary rule precludes the Court from relying on the fruits of an unlawful search to increase Holleran's sentence.

II.     **As an exercise of discretion, the Court should decline to consider the fruits of an unlawful search so as not to dilute the deterrent purpose of its suppression order.**

Even assuming arguendo that the Court is not prepared to find that the police acted intentionally for the purpose of increasing Holleran's sentence, the Court nonetheless should disclaim any reliance on the basement evidence.[2]  USSG §6A1.3(a) provides only that the Court *"may"* consider relevant information without regard to its admissibility under the rules of evidence applicable at trial.  The Court enjoys wide latitude in deciding what information on which to rely at sentencing and how such evidence is to be weighed.

---

[2] As Judge Easterbrook has opined, "[i]t is inconceivable that any defendant will be able to show that the police had only one of these purposes in mind when making a seizure." *United States v. Jewel*, 947 F.2d 224, 238 (7th Cir.1991) (Easterbrook, J., concurring).  He went on: "It is awfully hard to see why motive should matter on either prudential or doctrinal grounds. Is the seizure less offensive to the Constitution, or is deterrence less important, when the police drain their minds of the possibility that the seizure will contribute to a conviction?" *Id.*

3

There is no requirement that the Court rely on the fruits of an unlawful search, particularly where doing so would frustrate the deterrent function of its own suppression order. This Court can and should exclude the basement evidence from its sentencing calculus so as to ensure that the deterrent value in its suppression order remains intact. Judge Wolf has seen fit to do so on occasion, finding that "in this case at least, the suppression of the firearm for the purposes of computing the applicable Sentencing Guidelines is also necessary and appropriate to effectuate the purposes of the exclusionary rule." *United States v. Rullo*, 748 F. Supp. 36, 45 fn. 6 (D. Mass. 1990). To hold otherwise would detract from the force of the Court's suppression order, weaken Fourth Amendment protections, and encourage unconstitutional behavior. *See Verdugo v. United States*, 402 F.2d 599 (9th Cir. 1968) (reasoning that where some evidence has been seized lawfully, police subsequently have nothing "nothing to lose by risking an unlawful search" unless suppressed evidence is excluded at sentencing); *see also* Victor Jay Miller, An End Run Around the Exclusionary Rule: The Use of Illegally Seized Evidence Under the Federal Sentencing Guidelines, 34 Wm. & Mary L. Rev. 241 (1992) (advocating for application of exclusionary rule to sentencing proceedings); Clinton R. Pinyan, *Illegally Seized Evidence at Sentencing: How to Satisfy the Constitution and the Guidelines with an "Evidentiary" Limitation*, University of Chicago Legal Forum: Vol. 1994, Article 22 (1994) (advocating exclusion at sentencing of evidence illegally seized after officers have sufficient physical evidence to secure a conviction for a related offense).

## *SENTENCING RECOMMENDATION*

For the reasons outlined above, Holleran submits that the Court should find his Total Offense Level under the Guidelines to be 15 after accounting for acceptance of responsibility. Because his criminal history category is I, the resulting advisory sentencing range is 18-24

months.  He respectfully requests that the Court imposed a time-served sentence, as he has served approximately 20 months in pretrial detention, to be followed by three years of supervised release.

Whatever the Court's application of the Guidelines and the resulting advisory sentencing range, Holleran submits that a careful weighing of the sentencing factors under 18 USC § 3553(a) leads to the conclusion that a sentence of time served with 3 years of supervised release will be "sufficient, but not greater than necessary" to achieve the goals of sentencing.  While his involvement in drugs is undoubtedly alarming, Holleran's background and personal characteristics suggest there is reason for optimism.  He is 28 years old and this matter is his first criminal conviction of any sort.  Although major substance abuse by his parents caused significant turmoil in his childhood, his substance usage has largely been limited to marijuana.  He maintains healthy and supportive relationships with other family members and will have their support upon release.  With the assistance of the Probation Office, he intends to seek legitimate employment and work toward reunification with his children.  As Lucy Pinto's testimony at the motion to suppress hearing illustrated, Holleran has a number of redeeming qualities and the capacity to be a productive, upstanding member of the community.[3]

                                                  Respectfully submitted,

                                                  RYAN HOLLERAN,
                                                  By His Attorneys,

---

[3] Originally her tenant, Holleran came to be "like a son" to Ms. Pinto.  She noted that Holleran was always a good tenant who treated her with kindness, often helping her with tasks around the house.

/s/ *Scott Lauer*
Scott Lauer
B.B.O. # 667807
Samia Hossain
B.B.O. # 696329

Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
(617) 223-8061
scott_lauer@fd.org
samia_hossain@fd.org

## CERTIFICATE OF SERVICE

I, Scott Lauer, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on July 22, 2019.

*/s/ Scott Lauer*
Scott Lauer