UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 18-10064-LTS |
| | ) | |
| RYAN HOLLERAN, | ) | |
| | ) | |
| Defendant. | ) | |

## GOVERNMENT'S SENTENCING MEMORANDUM

For the reasons stated herein, the United States respectfully requests that the Court sentence the defendant to 46 months in prison followed by three years of supervised release, forfeiture of the drugs and firearms, and a $100 mandatory special assessment.

## FACTS

Police obtained a search warrant for Holleran's person and his apartment, Unit 2 of 116 North Street in New Bedford, a triple-decker residence, based on evidence that Holleran was selling cocaine out of the apartment.

When they executed the warrant, police seized 199 tabs of oxycodone 30 mg, baggies, cutting agent, an iPhone, and a key to a padlock, all from Holleran's person or his apartment. Then they went to the basement of the apartment building. There were two locks on the basement door – a slide lock and a padlock – but both were unlocked. The key found in Holleran's apartment fit the padlock. Police entered the basement, which they believed was a common area in which tenants, including Holleran, lacked a reasonable expectation of privacy. Officers found another 99 tabs of oxycodone 30 mg, a substance or mixture weighing 128.19 grams containing cocaine, a substance or mixture weighing 46 grams containing cocaine base, four firearms (a loaded Remington sawed-off shotgun, a Stag Arms semi-automatic rifle with an

obliterated serial number, a loaded revolver, and a Cobray semi-automatic pistol), 736 rounds of ammunition, and 14 firearm magazines.

Holleran's landlady, who lived in the first floor unit, and the third-floor tenants disclaimed ownership of the drugs, guns, and ammunition. The landlady told police that Holleran stored his items in the corner of the basement where police found the evidence.

When police searched Holleran's iPhone pursuant to a search warrant, they found many incriminating photos and videos of drugs and guns, including the Remington shotgun, the Stag Arms rifle, the Cobray pistol, and a revolver. Several of the videos recorded Holleran's face and/or voice.

A grand jury returned a four-count indictment against Holleran, charging him with Possession with Intent to Distribute Cocaine, Oxycodone, and 28 Grams of More of Cocaine Base, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B)(iii) (Count One); Possession of an Unregistered Firearm (the sawed-off shotgun), in violation of 26 U.S.C. § 5861(d) (Count Two); Possession of a Firearm with an Obliterated Serial Number, in violation of 18 U.S.C. § 922(k) (Count Three); and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c)(1) (Count Four).

Holleran moved to suppress the evidence seized from the basement. The Court allowed the motion. Doc. No. 64. The Court first rejected the government's argument that Holleran lacked an objectively reasonable expectation of privacy in the basement. *Id.* at 12-15. In doing so, the Court described this as a "'close case, the resolution of which is heavily dependent on particular facts.'" *Id.* at 14 (quoting *United States v. Rheault*, 561 F.3d 55, 61 (1st Cir. 2009)). The Court's decision turned in part on facts that were unknown to police at the time of the search. For example, the Court credited the landlady's testimony at the evidentiary hearing that

only she and Holleran had access to the basement; that she usually kept the basement locked; and that she shared an unusually close relationship with Holleran, whom she described as "like a son." *Id.* at 14-15. Next, the Court denied the government's request for application of the *Davis* good-faith exception to the exclusionary rule. *Id.* at 15-16. The Court rejected the government's argument that the basement was a "common area" in which all tenants of 116 North Street lacked an objectively reasonable expectation of privacy, pursuant to binding First Circuit precedent. *Id.* Finally, the Court rejected the government's request that the evidence be deemed admissible under the inevitable discovery doctrine, concluding that applying the doctrine in this case would weaken the Fourth Amendment's warrant requirement. *Id.* at 17-20.

Nowhere in its opinion did the Court find that the officers had intentionally violated Holleran's Fourth Amendment rights or acted in bad faith. Rather, the Court held that, "when presented with a novel factual scenario which [did] not fit within well-settled appellate precedent authorizing a warrantless search," the officers should have sought a warrant for the basement instead of assuming that it was a common area. *Id.* at 19.

The Court's suppression of the basement evidence left the government no choice but to dismiss the counts based on that evidence, that is, Counts Two-Four and so much of Count One as charged drugs seized from the basement. Holleran pled guilty to so much of Count One as charged drugs seized from his person or the apartment: 199 tabs of oxycodone 30 mg.

### CRIMINAL HISTORY CATEGORY

This is the third case in which Holleran has benefited from a favorable ruling on a suppression motion.

In 2010 Holleran was charged in New Bedford District Court with Possession with Intent to Distribute Class D when officers seized more than two pounds of marijuana from his home.

The charge was dismissed, however, after Holleran won a motion to suppress the evidence, apparently based on an argument that he did not give police permission to search his home. *See* PSR ¶ 44.

In 2015 Holleran was charged in Fall River District Court with numerous offenses, including firearms offenses and Possession with Intent to Distribute Class B (oxycodone). The charges were dismissed, however, after Holleran won a motion to suppress the evidence. That evidence included a loaded handgun which Holleran dropped outside his vehicle during a traffic stop, claiming it was his phone. *See* PSR ¶ 45.

Holleran has no criminal history points and falls in CHC I.

## USSG CALCULATION

Probation has correctly determined that relevant conduct includes the evidence seized from the basement, notwithstanding its suppression as trial evidence. *See United States v. Acosta*, 303 F.3d 78, 86 (1st Cir. 2002) ("the exclusionary rule does not bar the use of evidence seized in violation of a defendant's Fourth Amendment rights in sentencing"); USSG § 6A1.3(a) ("the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy").

The *Acosta* court "[left] open the question of whether the exclusionary rule would bar the use of evidence when police intentionally act in violation of the Fourth Amendment in order to increase a defendant's sentence." 303 F.3d at 86. Holleran argues that, when police seized evidence from the basement of Holleran's apartment building, they intentionally violated his Fourth Amendment rights in order to increase his sentence. Def. Sentencing Memo. at 2. This argument should be rejected because the Court did not find that officers intentionally violated

Holleran's Fourth Amendment rights. On the contrary, the Court described the factual scenario encountered by the officers as "novel" and characterized the suppression issue as a "close case." Doc. No. 64 at 14, 18. The harshest criticism offered by the Court was that the officers had "simply operated on the assumption that all basements [of apartment buildings] are unprotected common spaces" instead of making a more fact-specific assessment. *Id.* at 17. Finding that a police officer made an assumption that turned out to be unsupported by the facts is a far cry from finding that the officer intentionally violated the defendant's Fourth Amendment rights. Carelessness is poles apart from a calculated effort.

The Court also should reject Holleran's contention that the Court's rejection of the *Davis* good-faith exception to the exclusionary rule somehow was equivalent to a finding that the officers acted in bad faith. *See* Def. Sentencing Memo. at 3. The two are not the same. For *Davis* to apply, the Court would have had to have found that the police acted "in objectively reasonable reliance on binding appellate precedent." *Davis v. United States*, 564 U.S. 229, 232 (2011). In arguing *Davis* here, the government cited cases like *United States v. Garner*, 338 F.3d 78, 80 (1st Cir. 2003) (holding that defendant had no privacy interest in basement of apartment building "since it was a common area"); *United States v. Hawkins*, 139 F.3d 29, 32 (1st Cir. 1998) ("it is beyond cavil in this circuit that a tenant lacks a reasonable expectation of privacy in the common areas of an apartment building"); and *United States v. Cruz Pagán*, 537 F.2d 554, 557-58 (1st Cir. 1976) ("one does not have a reasonable expectation of privacy with regard to objects left in a common garage or basement of a multi-unit apartment house"). The Court acknowledged this precedent but said enough facts distinguished the basement of Holleran's apartment building from the areas found to be "common areas" in *Garner*, *Hawkins*, *Cruz Pagan*, and the like.

Finally, the Court should reject Holleran's argument urging the Court to exclude the

5

suppressed evidence from the Guidelines calculation. *See* Def. Sentencing Memo. at 3-4. There is no reason to do so. As noted above, the Court held the suppression issue to be a "close case." It did not find that officers intentionally violated Holleran's Fourth Amendment rights. It held that officers simply made assumptions based on their understanding of First Circuit precedent that turned out to be incorrect. (To be fair, officers are not usually lawyers who pore over details and nuances of appellate opinions.) Judge Wolf's decision not to consider a suppressed firearm at sentencing in a case decided twelve years before the First Circuit decided *Acosta* ought not to control the Court's decision-making here. *See* Def. Sentencing Memo. at 4 (citing *United States v. Rullo*, 748 F. Supp. 36, 45 n.6 (D. Mass. 1990)). Indeed, the First Circuit implied in a fairly recent decision that a district court *should* if not *must* consider suppressed evidence in making the Guidelines calculation at sentencing. *See United States v. Vazquez*, 724 F.3d 15, 28 n.10 (1st Cir. 2013) ("Even if the district court determines on remand that Vázquez's consent to the search of her home was invalid and so suppresses the evidence obtained therein, that decision *will not impact* the facts considered by the district court in calculating Vázquez's sentence.") (emphasis added).

### A SENTENCE OF 46 MONTHS IS REASONABLE

Probation has correctly determined that consideration of the drugs and guns seized from the basement yields an adjusted offense level of 26, minus 3 levels for acceptance of responsibility. *See* PSR ¶¶ 24-36. The Guidelines range for offense level 23, CHC I, is 46-57 months. *Id.* ¶ 78. The government recommends the low end of this range: 46 months.

It is the government's position that this case would not have been difficult to prove beyond a reasonable doubt had Holleran lost his suppression motion. If convicted, Holleran would have faced a mandatory minimum sentence of 15 years: five years for possession of 28+

grams of cocaine base with intent to distribute, plus ten years on and after for possession of a sawed-off shotgun in furtherance of a drug-trafficking crime. *See* 21 U.S.C. § 841(b)(1)(B)(iii); 18 U.S.C. § 924(c)(1)(B)(i).

The 46 months of imprisonment recommended by the government is neither unreasonable nor unduly harsh, particularly when one considers the 15-year mandatory minimum sentence that Holleran narrowly avoided in this case, as well as the benefit that his criminal history score gained from favorable suppression rulings in two previous cases. Including the basement evidence as part of relevant conduct also is fair in that Holleran was clearly the person who possessed those drugs and guns. This is not a case where the court suppressed evidence that may have belonged to someone other than the defendant.

## CONCLUSION

For these reasons, the United States respectfully requests that the Court sentence Holleran to 46 months in prison followed by three years of supervised release, forfeiture of the drugs and firearms, and a $100 mandatory special assessment.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By: */s/ Christine J. Wichers*
CHRISTINE J. WICHERS
Assistant U.S. Attorney
 (617) 748-3278
christine.wichers@usdoj.gov

**Certificate of Service**

I certify that, on July 22, 2019, this document filed through the ECF system was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ *Christine J. Wichers*
Christine J. Wichers